**McDERMOTT WILL & EMERY LLP**
Ellie Hourizadeh (#204627)
2049 Century Park East, 38th Floor
Los Angeles, CA 90067-3208
Telephone: 310-277-4110
Facsimile: 310-277-4730
ehourizadeh@mwe.com

Attorneys for Plaintiff,
DAZADI, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAZADI, INC. a California corporation,<br><br>               Plaintiff,<br><br>        v.<br><br>SPORT SQUAD, LLC, a Maryland limited liability company; and DOES 1- 10, inclusive,<br><br>               Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR**:<br><br>1. Federal trademark counterfeiting (15 U.S.C. §1114(a));<br>2. False designation of origin (15 U.S.C. §1125(a));<br>3. Breach of contract;<br>4. Intentional interference with prospective economic advantage;<br>5. Negligent interference with prospective business advantage;<br>6. Breach of implied covenant of good faith & fair dealing;<br>7. Unfair competition (Cal. Bus. & Prof. Code §§17200, *et seq.* and Common Law); and<br>8. Federal unfair competition (15 U.S.C. §1125(a)) |

Dazadi, Inc. alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has federal subject matter jurisdiction under the Lanham Act 15 U.S.C. § 1051 *et seq*. proscribing trademark counterfeiting. Jurisdiction is conferred under 28 U.S.C. §§ 1338(a) and 1338(b) and 15 U.S.C. § 1121.

2. This Court has jurisdiction over the state claims under 28 U.S.C. § 1367(a) and the doctrine of pendent jurisdiction.

3. The acts and transactions complained of herein were conceived, carried out, made effective, and had effect within the State of California and within this district, among other places. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c) and § 1400(a).

**PARTIES**

4. Plaintiff Dazadi, Inc. ("Dazadi") is a corporation formed under the laws of the state of California with a principal place of business located at 5146 Douglas Fir Road, Calabasas, California 90746.

5. Upon information and belief, Defendant Sports Squad, LLC ("SQ") is a Maryland limited liability company, having a principal place of business at 15800 Crabbs Branch Way, Suite 250, Rockville, Maryland 20855. Upon information and belief, SQ is a licensee of JOOLA brand products. SQ does business in this judicial district including but not limited to engaging in counterfeit activities and selling counterfeit products in this judicial district.

6. Dazadi is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 through 10, inclusive, or any of them, and therefore sues these defendants, and each of them, by such fictitious names. Dazadi will seek leave of Court to amend this complaint when the identities of these Defendants are ascertained.

7. Upon information and belief, at all relevant times mentioned in this complaint, defendants SQ and Does 1-10 (collectively "Defendants") and each of them,

were the agents of each other, and in doing the things alleged herein, each Defendant was acting within the scope and course of its agency and authority and was subject to and under the supervision of its co-Defendants.

## THE CREATION OF DAZADI

8. Dazadi was founded by four brothers - Ari, Jason, Elan and Josh - in May of 2002 around the family dinner table. Dazadi was initially headquartered in a small Los Angeles apartment and focused on selling basketball hoops. Since 2002, the creators of Dazadi have spent countless hours building the business and brand recognition of Dazadi to the point where Dazadi is one of the most popular online retailers for games and playthings.

9. As natives of Los Angeles, the boys loved playing outdoors almost year-round and shared some of their most memorable bonding experiences on the court. Quality family time often meant an afternoon of shooting hoops. When Ari first conceived of selling hoops online, he envisioned a company that would reflect his passion for basketball. Jason, then completing his last months as a Marine, was thrilled by the business idea and joined Ari in his pursuit. They enlisted the help of talented youngest brother Josh. Josh, then only a junior in high school, designed and built the very first website, SuperDuperHoops.com. Shortly after the launch of SuperDuperHoops.com, Elan left his position at Nike to join the family business and expanded the company's focus to include a game table category.

10. Dazadi now offers over 20,000 products, an extremely high level of customer service, and some of the finest home recreational goods in the world.

## DAZADI TRADEMARKS

11. Dazadi is the owner of several United States trademark registrations, including among them STRIKER FOOSBALL (Reg. No. 4935156) and STRIKER (Reg. No. 5,006,398).

12. Since December 2008, Dazadi's foosball products have been manufactured, marketed and sold using its STRIKER and STRIKER FOOSBALL trademarks (collectively the "STRIKER Marks").

13. Through continuous use and the thousands of dollars expended in advertising and marketing, the STRIKER Marks are widely known in connection with foosball tables.

14. Dazadi's continuous and prominent use of the STRIKER Marks has also resulted in the development of immeasurable goodwill associated with Dazadi and Dazadi products.

## SQ PROMISES DAZADI EXCLUSIVITY

15. In 2008, Dazadi became a dealer of products manufactured by SQ. Dazadi began to offer several items from SQ's catalog on Dazadi's website. Dazadi sold approximately $5,000,000 of SQ products.

16. On or about 2014, SQ offered Dazadi the exclusive right to offer and sell the TRIUMPH billiard table product. SQ assured Dazadi that SQ would not offer or sell the TRIUMPH product via Amazon.com as long as Dazadi promoted the TRIUMPH product. Dazadi agreed to do so ("Triumph Contract"). Dazadi spent the next several months promoting and selling the TRIUMPH product via its own internet site and third party sites like Wal-Mart and Sears. Before long, the TRIUMPH had become a top selling product in its category.

17. In November 2014, SQ breached the Original Contract by offering and selling the TRIUMPH product on Amazon.com.

18. When Dazadi confronted SQ about its sales of the TRIUMPH product on Amazon, SQ conceded that it has breached the Triumph Contract. As a concession, SQ offered Dazadi the exclusive right to sell the NOVA table tennis product as a replacement for the TRIUMPH product, starting in April 2015. Dazadi agreed ("Nova Contract").

19. In 2016, Dazadi realized $2,600,000 in revenue from the sale of the NOVA table.

20. SQ then breached the parties' Nova Contract by offering and selling the NOVA table tennis products via third party sites like www.target.com, and www.overstock.com. Upon information and belief, SQ continues to sell the NOVA product to third parties in violation of the Nova Contract. Upon information and belief, beginning in January 2016, SQ will begin selling the NOVA product on Amazon.com.

## SQ STEALS THE STRIKER MARKS FOR ITSELF

21. To make matters worse, in late 2015 Dazadi learned that SQ had applied to register the name STRIKER for itself. Dazadi demanded that SQ assign the trademark application for the STRIKER mark to Dazadi.

22. SQ agreed to transfer the trademark application to Dazadi. This application, now owned by Dazadi, matured to registration on July 26, 2016, Reg. No. 5,006,398.

## DAZADI AND SQ SIGN A SETTLEMENT AGREEMENT

23. On or about January 24, 2016, Dazadi and SQ entered into a Settlement Agreement to address the numerous underhanded activities by SQ. Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement.

24. The Settlement Agreement stated that Dazadi would continue to be the exclusive purchaser of the NOVA pool tables produced by SQ. (At the time of the signing of the Settlement Agreement Dazadi was unaware that SQ had already violated Dazadi's exclusivity over this product.) The exclusivity period was to run through January 22, 2017 with automatic annual renewals in the absence of a cancellation by either party.

25. The Settlement Agreement also stated that SQ would sell off its inventory of goods bearing the STRIKER Marks and cease all sales of goods bearing the STRIKER Marks upon exhaustion of SQ's inventory of these products, or by October 31, 2016, which ever first occurred.

26. The Settlement Agreement also obligated SQ to do "everything necessary" to remove products with the STRIKER Marks from the market by October 31, 2016.

27. According to the Settlement Agreement, if SQ continued to sell goods bearing the STRIKER Marks after October 31, 2016, or if SQ violated the exclusivity and sold NOVA pool tables to others, in addition to all other rights that Dazadi might have, SQ would be obligated to provide Dazadi with accurate sales information of all tables sold with the STIRKER Marks and to pay Dazadi a 5% royalty for all units of STRIKER products sold.

28. In this connection, the Settlement Agreement gives Dazadi a right to audit SQ's books and records for accuracy of sales information.

## SQ BREACHES THE SETTLEMENT AGREEMENT

29. Almost immediately after signing the Settlement Agreement, SQ breached the Settlement Agreement in at least the following ways:

    a. SQ continued to offer and sell products that bear the STRIKER Marks after October 31, 2016 and possibly also after SQ had exhausted the inventory of STRIKER products that it had on hand as of January 2016. In fact, as of the date of preparation of this complaint, SQ continues to sell products with the STRIKER Marks.

    b. the Settlement Agreement obligated SQ to do "everything necessary" to remove products with the STRIKER Marks from the market by October 31, 2016. SQ breached this provision by continuing to sell products with the STRIKER Marks. Not only is SQ selling goods with the STRIKER Marks to consumers, SQ is also selling these products to other retailers that compete with Dazadi.

    c. SQ failed to respect Dazadi's exclusivity to the NOVA pool tables as early as the day after the Nova Contract was entered into. SQ continues to sell NOVA products to other retailers and consumers in violation of the exclusivity that Dazadi had until January 22, 2017.

30. SQ's acts have resulted in significant monetary damages, and have damaged the reputation and goodwill associated with Dazadi and the STRIKER Marks. Dazadi continues to suffer as a result of SQ's actions.

## SQ ENGAGES IN TRADEMARK COUNTERFEITING

31. Sometime after transferring ownership of the application to register the STRIKER mark and sometime after entering into the Settlement Agreement, SQ began to sell foosball tables bearing the STRIKER Marks ("Counterfeit Products").

32. The STRIKER Marks are affixed to the Counterfeit Products creating a commercial impression and visual appearance that is indistinguishable from the impression and appearance created by the authentic STRIKER products. The Counterfeit Products are sold using similar product descriptions to the same retailers and to consumers via the same channels of trade as the authentic STRIKER products.

33. Defendants' conduct has caused and continues to cause substantial harm to Dazadi and to its intellectual property and threatens to interfere with the continued growth and development of the STRIKER Marks.

## **FIRST CLAIM FOR RELIEF**

**(Trademark Counterfeiting)**

**15 U.S.C. §1114(a)**

**Against All Defendants**

34. Dazadi repeats and re-alleges each and every allegation contained in paragraphs 1 through 33 as if set forth fully herein.

35. Dazadi has continuously used the STRIKER Marks on and in connection with the distribution, marketing and sale of high quality foosball tables in interstate commerce. Dazadi's continuous use of the STRIKER Marks pre-dates Defendants' counterfeit use.

36. Defendants have used the STRIKER Marks or a mark that is substantially indistinguishable from the STRIKER Marks in connection with goods that are competitive with and/or related to Dazadi's goods.

37. Defendants' affixed the STRIKER Marks on the Counterfeit Products without Dazadi's knowledge or permission.

38. Upon information and belief, Defendants' sale of the Counterfeit Products was intentional in that Defendants knew the STRIKER Marks belong to Dazadi and knew as well that it was under contract to provide such products exclusively to Dazadi.

39. Dazadi has requested that Defendants cease and desist from their acts of trademark counterfeiting. However, Defendants have refused to cease their counterfeiting activities.

40. Defendants threaten to continue to manufacture, display, advertise, sell and offer for sale the Counterfeit Products, and unless restrained and enjoined, will continue to do so to Dazadi's irreparable damage.

41. Defendants' unauthorized use of the STRIKER Marks in connection with foosball tables constitutes trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. §1114(a), *et seq.*

42. As a direct and proximate result of Defendants' trademark counterfeiting, Dazadi has and will suffer damages to its business, reputation and good will, and the loss of royalties and profits that Dazadi would have made but for Defendants' acts. Upon information and belief, Defendants' acts of infringement have also resulted in substantial profits for Defendants. The amount of these damages is unascertainable at the present time but on information and belief, such damages are no less than $1,000,000.

43. Dazadi has also incurred costs and attorneys' fees to bring this action.

44. Defendants' conduct has caused and will continue to cause irreparable injury to Dazadi unless preliminarily and permanently enjoined.

## SECOND CLAIM FOR RELIEF
### (False Designation Of Origin)
### 15 U.S.C. § 1125(a)
### Against All Defendants

45. Dazadi repeats and re-alleges the allegations set forth in paragraphs 1 through 44, as if set forth fully herein.

46. Dazadi is the exclusive owner of the STRIKER Marks.

47. The design of each foosball table bearing the STRIKER Marks is unique and indicates Dazadi as the source for such goods.

48. The STRIKER Marks are inherently distinctive, arbitrary and fanciful and, upon information and belief, have acquired secondary meaning.

49. The STRIKER Marks have been used continuously in connection with foosball tables throughout the United States in interstate commerce since at least 2008.

50. Since its first use, each foosball table bearing the STRIKER Marks has served as an indicator of source of the products and services sold, promoted or advertised.

51. Defendants have advertised, offered for sale and sold in interstate commerce the Counterfeit Products using the STRIKER Marks or a nearly identical mark.

52. Upon information and belief, Defendants' use of an identical or nearly identical name in connection with products are indistinguishable from the impression and appearance created by the STRIKER products was intentional in that Defendants knew the Counterfeit Products are indistinguishable from the foosball tables sold using the STRIKER mark and that such use would deceive the public and cause customer confusion.

53. The Counterfeit Products are sold using the same channels of trade and are likely to cause customer confusion and deceive the public into believing that there is a connection between the Counterfeit Products and Dazadi.

54. Defendants are not and have never been authorized or licensed to advertise, offer for sale, or sell the Counterfeit Products.

55. Defendants' advertisement, offer for sale and sale of the Counterfeit Products is likely to cause confusion, mistake and to deceive as to the affiliation, connection or association of Defendants with Dazadi as to the origin, sponsorship or approval of Defendants' products with Dazadi's products and constitutes a false designation of origin in violation of 15 U.S.C §1125(a).

56. As a direct and proximate result of Defendants' false designation of origin, Dazadi has and will suffer damages to their business, reputation and good will and the loss of sales, royalties and profits that Dazadi would have made but for Defendants' acts.

57. Upon information and belief, Defendants' acts of infringement have also resulted in substantial profits for Defendants. The amount of these damages is unascertainable at the present time but on information and belief, such damages are no less than $1,000,000.

58. Defendants threaten to continue to manufacture, display, advertise, sell and offer for sale the Counterfeit Products, and unless restrained and enjoined, will continue to do so to Dazadi's irreparable damage.

59. It would be difficult to ascertain the amount of compensation that could afford Dazadi adequate relief for such continuous acts of false designation of origin. Dazadi's remedy at law therefore is not adequate to compensate Dazadi for the injuries that will result from Defendants' false designation of origin. Accordingly, the Court should enjoin and restrain Defendants from committing any further such acts.

60. Dazadi has also incurred costs and attorneys' fees to bring this action.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

### Against Sport Squad, LLC

61. Dazadi repeats and re-alleges each and every allegation contained in paragraphs 1 through 60, inclusive, as if set forth fully herein.

62. Dazadi and SQ are parties to the Triump Contract, Nova Contract and Settlement Agreement (collectively "Agreements").

63. SQ has breached the Agreements by, in part, (i) selling TRIUMPH products to other retailers in violation of the exclusivity granted to Dazadi, (ii) selling NOVA products to other retailers in violation of the exclusivity that Dazadi had from April 2015 until January 22, 2017, (iii) attempting to register Dazadi's trademarks for itself, (iv)

selling Counterfeit Products, and (v) failing to remove the Counterfeit Products from the market place.

64. Dazadi has performed each and every term, covenant and condition of the Agreements, except as such performance has been excused by Defendants' conduct as alleged herein.

65. As a direct and proximate result of SQ's breaches, Dazadi has sustained damages in an amount to be determined at trial.

66. Dazadi has also incurred costs and attorneys' fees to bring this action.

67. SQ's conduct has caused and will continue to cause irreparable injury to Dazadi unless preliminarily and permanently enjoined.

## FOURTH CLAIM FOR RELIEF

**(Intentional Interference With Prospective Economic Advantage)**

**Against All Defendants**

68. Dazadi repeats and re-alleges the allegations set forth in paragraphs 1 through 67, as if set forth fully herein.

69. An economic relationship exists between Dazadi and retailers, distributors, and customers containing a probable future economic benefit or advantage to Dazadi.

70. Defendants knew of the existence of the relationships between Dazadi and the retailers, distributors, and customers. Defendants intentionally engaged in wrongful conduct designed to interfere with or disrupt these relationships by amongst other things, soliciting Dazadi's retailers, distributors and customers.

71. Dazadi's economic relationship with the retailers, distributors, and customers was actually interfered with or disrupted. Defendants' acts were a substantial factor in causing this disruption.

72. Defendants' acts described herein were and are unlawful, wrongful, willful and intentional. Defendants' engaged in wrongful conduct through in part breach of contract and trademark infringement. The wrongful conduct of Defendants that was designed to interfere with or disrupt these relationships caused damage to Dazadi.

DM_US 78636780-4.073799.0033

COMPLAINT

73. Upon information and belief, Defendants' acts have resulted in substantial profits for Defendants in an as yet unascertained amount. Defendants' acts have also resulted in damages to Dazadi caused by diversion of sales to Defendants, lost royalties and other damages resulting from irreparable harm to Dazadi's goodwill and the STRIKER Marks. The amount of these damages is unascertainable at the present time but on information and belief, in an amount not less than $1,000,000.

74. Defendants' acts have been brazen and malicious. Defendants have acted knowingly, willfully, wantonly and recklessly, with the unlawful purpose of interfering with Dazadi's economic relationship with the retailers, distributors, and customers and for Defendants' own benefit. An award of punitive damages of sufficient size to punish Defendants and to set an example in order to deter others who might be inclined to so act is fully justified.

## FIFTH CLAIM FOR RELIEF

### (Negligent Interference With Prospective Business Advantage)

### Against All Defendants

75. Dazadi repeats and re-alleges the allegations set forth in paragraphs 1 through 74, as if set forth fully herein.

76. An economic relationship exists between Dazadi and retailers, distributors, and customers containing a probable future economic benefit or advantage to Dazadi.

77. Defendants knew or should have known of the existence of the relationships between Dazadi and the retailers, distributors, and customers. Defendants engaged in wrongful conduct designed to interfere with or disrupt these relationships.

78. It was reasonably foreseeable that Defendants' wrongful conduct will interfere with or disrupt Dazadi's economic relationship with the retailers, distributors, and customers. Defendants were negligent in their conduct or failed to exercise due care.

79. Defendants engaged in wrongful conduct through, in part, breach of contract and trademark infringement.

80. Defendants' conduct has interfered with Dazadi's prospective business relations and Dazadi's business, damaged the reputation of the STRIKER Marks and resulted in irreparable injury to Dazadi.

81. Defendants' conduct was a substantial factor in causing Dazadi harm and/or Defendants' unjust enrichment.

82. Dazadi has no adequate remedy at law.

83. Dazadi has also suffered loss of profits and other damage, and Defendants have earned illicit profits, in an amount to be proven at trial, as the result of the aforesaid acts of Defendants.

## SIXTH CLAIM FOR RELIEF

## (Breach of Implied Covenant of Good Faith & Fair Dealing)

## Against All Sport Squad, LLC

84. Dazadi repeats and re-alleges the allegations set forth in paragraphs 1 through 83, as if set forth fully herein.

85. Dazadi and SQ are parties to the Agreements.

86. Upon information and belief, Dazadi alleges that the Agreements entered into between Dazadi and SQ each contains an implied covenant of good faith and fair dealing.

87. Dazadi has performed all conditions, covenants, and promises required by the Agreements and commercial understandings.

88. SQ had an independent duty to abstain from selling the Counterfeit Products and breaching the parties' Agreements.

89. Upon information and belief, SQ failed to abstain from selling the Counterfeit Products and breaching the parties' Agreements.

90. As a direct and proximate result of SQ's breach of implied covenant of good faith and fair dealing, Dazadi has been damaged in an amount to be determined at trial.

91. As a further proximate result of SQ's breach of implied covenant of good faith and fair dealing, Dazadi has also incurred and will in the future incur consequential,

special and incidental damages, including, but not limited to, attorneys' fees and costs of this action.

## SEVENTH CLAIM FOR RELIEF

### (Unfair Competition)

### California Business & Professions Code § 17200 *et seq.* and Common Law

### Against All Defendants

92. Dazadi repeats and re-alleges the allegations set forth in paragraphs 1 through 91, as if set forth fully herein.

93. The various acts of Defendants as alleged herein constitute unfair and unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.* and under California common law.

94. Amongst other things, upon information and belief, Defendants have offered for sale and sold the Counterfeit Products using Dazadi's distinctive STRIKER Marks and/or a nearly identical name.

95. Upon information and belief, Defendants engaged in the conduct alleged in this complaint knowingly and willfully, or, alternatively, did not meet their duty of reasonable care.

96. Upon information and belief, Defendants have used these unfair and unlawful business practices to deceive the consuming public and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§17200 *et seq.* and unfair competition under California common law.

97. Defendants' unlawful, unfair and fraudulent business practices described above present a continuing threat to members of the public in that they are likely to be deceived as to the origin and quality of the products bearing the STRIKER Marks.

98. Defendants' actions as alleged herein were and are likely to deceive the consuming public and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§ 17200 *et seq.* and unfair competition under California common law.

99. These acts by Defendants have irreparably damaged Dazadi and the consuming public and such damage will continue unless these acts are enjoined by this Court and the Court orders restitution of all illicit profits wrongfully obtained by Defendants.

## EIGHTH CLAIM FOR RELIEF

### (Federal Unfair Competition)

### 15 U.S.C. §1125(a)

### Against All Defendants

100. Dazadi repeats and re-alleges the allegations set forth in paragraphs 1 through 99, as if set forth fully herein.

101. Amongst other things, upon information and belief, Defendants have offered for sale and sold the Counterfeit Products using Dazadi's distinctive STRIKER Marks and/or a nearly identical name.

102. Upon information and belief, Defendants engaged in the conduct alleged in this complaint knowingly and willfully, or, alternatively, did not meet their duty of reasonable care.

103. Defendants' actions as alleged herein were and are likely to deceive the consuming public and therefore constitute unfair and fraudulent business practices in violation of 15 U.S.C. §1125(a).

104. Defendants' unlawful, unfair and fraudulent business practices described above present a continuing threat to members of the public in that they are likely to be deceived as to the origin and quality of the products bearing the STRIKER Marks.

105. The acts as alleged herein violate 15 U.S.C. §1125(a).

106. Upon information and belief, Defendants' acts of unfair competition have resulted in substantial illicit profits for Defendants in an as yet unascertained amount.

107. Defendants' acts of unfair competition have also resulted in damages to Dazadi caused by diversion of sales to Defendants, lost sales and other damages resulting from irreparable harm to Dazadi's goodwill. The amount of these damages is

unascertainable at the present time but on information and belief, such damages are no less than $1,000,000.

108. Dazadi has also incurred costs and attorneys' fees to bring this action.

109. Defendants' conduct has caused and will continue to cause irreparable injury to Dazadi unless preliminarily and permanently enjoined.

WHEREFORE, Dazadi pray for judgment as follows:

1. That Defendants and their principals, agents, representatives, servants and employees and all persons in active concert or participation with them be preliminarily and permanently enjoined and restrained:

    a)    from using the STRIKER Marks;

    b)    from selling the NOVA pool tables to any retailer other than Dazadi through January 22, 2018; and

    c)    from engaging in unfair competition by making and selling the Counterfeit Products.

2. That Defendants and their principals, agents, representatives, servants and employees and all persons in active concert or participation with them be ordered to recall and deliver up for destruction all products and packaging for the Counterfeit Products;

3. That Defendants and their principals, agents, representatives, servants and employees and all persons in active concert or participation with them be ordered to engage in corrective advertising to dispel the confusion causes by Defendants' wrongful acts;

4. That within thirty days after service of judgment with notice of entry thereof upon it, Defendants be required to file with the Court and serve upon Dazadi's attorneys a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs;

5. That an accounting be ordered and judgment be rendered against Defendants for all profits wrongfully derived by Defendants;

6. All damages adequate to compensate Dazadi for Defendants' acts;

7. Enhanced damages for Defendants' willful acts and bad faith;

8. An assessment of interest on damages so computed, including prejudgment interest;

9. Dazadi's costs and attorney's fees in pursuing this action; and

10. Such other and further relief as this Court may deem appropriate.

Dated: January 5, 2017        McDERMOTT WILL & EMERY LLP


By: /Ellie Hourizadeh/
    Ellie Hourizadeh

Attorneys for Plaintiff,
Dazadi, Inc.